UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHMET ALI K.,<br><br>      Petitioner,<br><br>     v.<br><br>TODD M. LYONS, et. al.,<br><br>     Respondents. | No. 1:26-cv-02655-TLN-JDP<br><br>A # 220-827-650<br><br><br>**ORDER** |

This matter is before the Court on Petitioner Mehmet Ali K.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Motion for Temporary Restraining Order ("TRO") (ECF No. 5). Respondents filed a motion to dismiss. (ECF Nos. 7.) Petitioner filed a response. (ECF No. 8.) For the reasons set forth below, Petitioner's habeas petition (ECF No. 1) is GRANTED, Respondents' Motion to Dismiss (ECF No. 7) is DENIED, and Petitioner's Motion for TRO (ECF No.5) is DENIED as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 14, 2021, Petitioner entered the United States on a B-2 visa. (ECF No. 1 at

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

5.)  On December 13, 2021, Petitioner applied for asylum.  (*Id.* at 5–6.)  On December 27, 2025, while Petitioner's asylum application remained pending, he was detained and taken into immigration custody.  (*Id.* at 6.)

On January 12, 2026, at a bond determination hearing, an immigration judge denied bond, concluding Petitioner posed a flight risk.  (*Id.*)  Petitioner later submitted a second bond request, which he withdraw on March 19, 2026.  (*Id.*)  Petitioner's third bond request was filed and subsequently denied on March 31, 2026, on the grounds that there had been no material change in circumstances.  (*Id.*)

On April 8, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus.  (ECF No. 1.)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release.  (*Id.* at 14–15.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims Respondents failed to provide Petitioner with an adequate individualized custody determination in violation of Petitioner's due process rights.[2]  (ECF No. 1 at 13.)  In

---

[2]    Petitioner also argues Petitioner's prolonged immigration detention violates the due process clause of the Fifth Amendment and fundamental right to family unity.  (ECF No. 1 at 7–

opposition, Respondents argue Petitioner received a bond hearing in January 2026, withdrew his second request for a bond hearing, and failed to show any material changes after submitting his third bond request in March 2026. (ECF No. 7 at 2.) Respondents contend Petitioner's habeas petition should be dismissed on prudential exhaustion grounds, asserting that Petitioner failed to appeal the immigration judge's bond determinations.[3] (*Id.* at 3–4.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects."

11.) As the Court finds Respondents failed to provide a custody determination that comports with due process, the Court declines to consider additional arguments at this juncture.

[3]    After considering the factors articulated in *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007), the Court finds prudential exhaustion is not required. First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's due process claim. Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (*citing Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, it is unlikely the agency will correct its own mistake upon further review.

*Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause.  Petitioner has lived in the United States for at least five years during which time he complied with all applicable laws.  Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause.  *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

B.     Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe*, 787 F. Supp. 3d at 1094. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for

hearings," there is nothing in the record indicating Respondents demonstrated, by clear and convincing evidence,[4] that Petitioner's detention is necessary to achieve those purposes or that those purposes outweigh Petitioner's constitutionally protected interest in remaining free from detention. *Hernandez*, 872 F.3d at 990.

Here, the record shows the immigration judge rejected Petitioner's request for bond due solely to a finding of flight risk. (ECF No. 1-1 at 2, 6.) The decision to continue Petitioner's detention on that finding alone does not pass constitutional muster. For Petitioner's detention to be justified by reason of flight risk, there must be some consideration of whether any bond amount or alternative release conditions could ensure Petitioner's appearance at future immigration proceedings. *See Hernandez*, 872 F.3d at 990-91; *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1088 (N.D. Cal. 2024) ("If alternatives can mitigate risks and protect the government's interests, then detention (instead of one of those alternatives) is excessive in relation to those interests and unconstitutionally punitive."). Petitioner has a pending asylum application, strong incentives to appear in proceedings, and significant ties to the United States, including his spouse who lives in the United States. In the absence of a determination as to whether any bond amount or alternative release conditions could ensure Petitioner's appearance at future immigration proceedings, based on the record before the Court, Petitioner has not been provided with adequate due process to ensure the deprivation of his liberty is justified. Thus, the Court finds the risk that Petitioner has been erroneously deprived of his liberty is high.

Third, the government's interest in detaining Petitioner without adequate due process is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Any burden associated with this provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds due process requires that

---

[4] District courts have routinely found the appropriate standard for post-deprivation bond hearings is for the Government to bear the burden of proving by clear and convincing evidence that the noncitizen's detention is necessary to prevent danger to the community or flight. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025); *Caglar v. Wamsley, et al.*, No. 2:26-cv-00787-TMC, 2026 WL 1123515 (W.D. Wash. Apr. 24, 2026).

Petitioner receive a hearing before a neutral decisionmaker where Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)  IT IS HEREBY ORDERED:

1.   Respondents are ENJOINED and RESTRAINED from continuing to detain Petitioner for more than **seven (7) days** from the date of this Order without a bond hearing before a neutral factfinder at which the Government bears the burden to justify Petitioner's detention through a showing that Petitioner poses a danger to the community or a flight risk by clear and convincing evidence. The factfinder must consider Petitioner's financial circumstances for bond and alternative conditions of release. At any such hearing, Petitioner shall be allowed to have counsel present. If Petitioner is not found to be a danger to society or a flight risk, Respondents must immediately release Petitioner. Respondents may impose any restrictions or conditions determined to be necessary by the factfinder at the hearing.

2.   Within **five (5) days** from the date of the bond hearing, Respondents are ORDERED to file a status report confirming that the hearing occurred, the date of the hearing, and the outcome of the hearing.

3.   If Petitioner is released, Respondents are further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the Government bears the burden to show by clear and convincing evidence that material changed circumstances demonstrate: (a) a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. At any such hearing, Petitioner shall be

6

allowed to have counsel present.

4.    Petitioner's Motion for TRO is DENIED as moot.  (ECF No. 5.)

5.    Respondents' Motion to Dismiss is DENIED.  (ECF No. 7.)

6.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE